## MYRON S. GLEASON v. MARTIN KNAPP.

*Criminal conversation—Estoppel—Husband's testimony.*

56    291
d138  ¹228
j138  ¹237

1. A wife sought divorce and obtained a decree for cruelty. The husband made no defense, but afterwards sued another man for criminal conversation with his wife, alleging an act as known to him before the divorce suit. *Held*, that this fact would have been a perfect defense to the suit for divorce, so that the decree therefor was conclusive against its existence and a complete bar to the civil action.

2. An undivorced husband suing for criminal conversation with his wife cannot himself testify to the act. How. Stat. § 7546.

Error to Kalamazoo. (Mills, J.) Jan. 28.—April 9.

CASE. Defendant brings error. Reversed.

*Hawes & Shakespeare* and *Dallas Boudeman* for appellant. A husband cannot testify to the adultery of his wife: *Mathews v. Yerex* 48 Mich. 361; 1 Greenl. §§ 254, 334–5.

*O. T. Tuthill* and *W. G. Howard* for appellee.

CAMPBELL, J. In this case plaintiff sued defendant for criminal conversation with his wife, and recovered a verdict

of $2000. The case is remarkable in many respects, and presents several questions of considerable apparent importance, which, however, upon some conditions presented by the record, may not be very decisive one way or the other.

In order to understand the difficulties presented by the record, the order of facts becomes material. Plaintiff and his former wife, who is now divorced and married to defendant, were married in 1874, and lived together in Branch county, having two children. In the latter part of September, 1880, plaintiff hired out his wife's services to defendant as housekeeper, and made an arrangement for his own services on the farm. There is testimony introduced by himself that his own work was dependent on Knapp's need of it, and that he was paid by the day for this. There is no testimony on plaintiff's behalf tending to show any grievance or cause of grievance before December 23, 1880. On the evening before that day he testified that after he went to bed his wife and defendant sat up in a room opening from the bedroom for some time, and he got up and joined them, and that during that night he and Knapp had some bickering, as well as he and his wife, and that Knapp told him his wife was not going to live with plaintiff any more, and that he could not keep plaintiff or his team any longer. Plaintiff, however, says he had then no hard feelings against Knapp, and that he asked his wife to go away with him, but she would not go. Defendant's testimony contradicted all the matters which had any questionable appearance, as sworn to by plaintiff. Plaintiff swore that he went away December 24th and came back with his brother late at night on January 1st, and saw through a window what he claims was conduct from which adultery was to be inferred, and that he went in and was upbraided by defendant for his treatment of his wife, but made no quarrel with defendant, and told him he did not come there to quarrel with him, but to induce his wife to live with him. She did not go that night. On or about the 10th of January, 1881, he went again to the neighborhood and sent for his wife, who went to see him, and they returned to Knapp's and lodged together, and during the night both

got up to help Knapp, who was sick. She did not go away with her husband on that occasion, and he says the next time he went to Knapp's was March 16, 1881, when he claims he wanted her to go with him, but she again refused.

During this interval, on January 17, 1881, she swore to a bill of divorce against him, alleging, among other acts of cruelty, his conduct in December at and before the time which he refers to, and his abuse on that occasion, as well as previous misconduct, and failure to support her and his family. To this bill he put in no answer, and on proofs produced in the usual way, a decree was granted in her favor by the circuit judge, who tried this cause on the 13th day of February, 1882, granting her an absolute divorce and the custody of her children.

Plaintiff, on the 16th of February, 1881, filed a bill himself, asking for a divorce on the ground of his wife's adultery, and averring as the only definite act the one which he claims to have witnessed on January 1, 1881, and that since that time he has not voluntarily cohabited with her. She entered her appearance, and called for a copy of the bill. No further proceedings appear in that case.

Plaintiff's testimony in the case now before us is quite positive that what he saw that night did not lead him to complain of his wife's adultery, or prevent his desire to have their domestic relations continue, and did not prevent subsequent cohabitation.

The wife's divorce proceedings, which began in January, 1881, being followed by a decree which established that she had a sufficient cause of grievance at the earliest date when plaintiff attempted to show any grievance, must be regarded as a bar to any cause of action for that grievance, if it existed. If plaintiff had such a cause of action as he now asserts, it would not only have been admissible in evidence in that divorce suit, but it would have been an absolute and perfect defense to it. The suggestion of the circuit judge that the jury might, if they saw fit, infer that that very divorce suit was the outcome of defendant's misconduct, cannot be allowed any force, since defendant's failure to

defend on that ground, when that defense was open to him, and, according to his claim now, was known to him, left it as completely cut off as any other; and the decree is legally conclusive against him that no such facts exist. The facts sworn to by himself in this case are entirely contradictory to his sworn bill concerning the important allegation that he never cohabited with his wife after January 1, 1881, and his claim that he persisted in desiring her return after both bills were filed is somewhat extraordinary in view of this action.

We shall not spend any time in considering the other law points urged on the argument, for there is nothing on plaintiff's own showing which, in our view, left him anything to go to the jury upon, as the divorce proceedings were introduced by himself, and without showing them he could not have been offered as a witness at all.

As we have nothing to do with passing on the testimony, we are not at liberty to discuss the evidence on the main questions on which the witnesses for the defense made out a full defense on the merits. The defense made by his own silence in the divorce suit is as full a bar as could be made, and in view of it the case is a very singular one to be brought in a court of justice after the divorce had become absolute and not appealed from.

The judgment must be reversed and a new trial granted.

The other Justices concurred.