JENNIE CORRY v. NELSON U. LACKEY.

*Divorce—Extreme cruelty—Res judicata—Necessaries—Liability of husband.*

1. A decree of divorce granted to a wife on the ground of extreme cruelty is not *res judicata* of that question of fact so as to prevent the husband from contesting its truth in a suit by a third person against him to recover for necessaries furnished the wife pending the divorce proceedings.

2. In an action by an aunt against the former husband of her niece, from whom the niece had secured a divorce on the ground of extreme cruelty, to recover for necessaries furnished the niece pending the divorce proceedings, two letters were produced, written, as the evidence tended to show, by the plaintiff, one to her niece, concluding as follows: "This is from your aunt Jennie, who clothed and fed you and your daughter, and did what your father and mother would not do, so you could put away your husband, and get an old man, because he had more money;" and the other to the defendant, urging him to sue the second husband for damages, the niece having remarried, and promising to furnish the necessary witnesses. And it is held that said letters might well be interpreted as supporting the defendant's contention, that the niece left the defendant without justification, intending to institute the divorce proceedings, that she might marry a wealthier man, whom she had already determined upon, all with the knowledge and through the connivance of the plaintiff, and justified a charge that, if the jury so found the facts to be, plaintiff could not recover.

Error to Shiawassee. (Wisner, J.) Argued April 18, 1895. Decided May 21, 1895.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*D. P. Sagendorph,* for appellant.

*H. H. Pulver* and *Lyon & Hadsall,* for defendant.

MONTGOMERY, J. Plaintiff brought suit to recover for board, washing, clothing, music lessons, and school bills furnished to and paid for the wife and 10 year old daughter of defendant. The plaintiff was an aunt of the defendant's wife. The jury returned a verdict for the defendant, and plaintiff brings error.

There was testimony tending to show that defendant's wife left his home, taking her daughter with her, because of his extreme cruelty, and that she was justified in so doing, and that the plaintiff furnished the items of necessaries set out in her bill of particulars during her

absence from defendant. On the part of the defense this claim was denied, and there was testimony tending to show that defendant's wife left him without justification, and ostensibly with the purpose of visiting relatives in Missouri and Kansas, and instead went to Jackson, and that the purpose was to institute proceedings for a divorce, in order that she might marry a wealthier man, who had already been determined upon, and that this was not only with the knowledge of plaintiff, but through her connivance. There was also testimony tending to show that plaintiff had been fully paid by defendant's former wife, at least to the satisfaction of plaintiff, it having been agreed upon that no charge would be made beyond what Mrs. Lackey was able to furnish in labor and funds, from time to time, and did in fact furnish.

1. The court charged the jury as follows:

"While a husband and father is charged with the duty I have mentioned, yet, if he conducts himself in a manner proper to the relations, he has a right to select the place where he will discharge such duties. But if he treats his wife in the home so as to subvert the happy relations which should exist between husband and wife, and is guilty of such conduct, either by word or act or both, as to make his wife's condition an unhappy one, without fault upon her part, and to such an extent as justifies her leaving the home, then in such case she takes with her the implied authority to pledge the credit of the husband for such purposes, and for such articles as are necessary to her support and maintenance in the manner of life before that time maintained and supported by the husband to an extent commensurate with his means. Provided that the jury find from all the evidence that Mrs. Lackey was justified in leaving her husband and leaving his home by reason of his conduct and treatment of her, and that plaintiff furnished her necessaries, it would be the duty of the husband to pay for the same; and, if such necessaries have not been paid for, then plaintiff is entitled to verdict for the value of such necessaries, with interest at six per cent. from the date upon which they were furnished. But if you find that Mrs. Lackey did not leave her husband because of his acts or doings, or that she was not justified in so doing, then

she had no right to pledge her husband's credit for necessaries for herself to be furnished away from defendant's home."

This instruction correctly embodied the law of the case, and is not open to criticism, unless we admit the contention of plaintiff's counsel that a decree of divorce subsequently granted to the wife of defendant is *res judicata*. It appears that defendant's wife procured a divorce from him on the ground of extreme cruelty, and it is contended that he cannot now be heard to say that he was not guilty of this cruelty. We do not think this contention can be allowed. As between the parties to that litigation the finding of fact is final and conclusive, but between plaintiff and defendant it is not. *Gill v. Read* 5 R. I. 343. See, also, *Jacobson v. Miller*, 41 Mich. 90.[1]

2. The circuit judge also charged the jury as follows:

"If you find from all the evidence that Mrs. Lackey left or remained away from her husband, not because of his acts or conduct, but for the purpose of having the marriage relation between them dissolved, that she might marry another man, and if you further find that Mrs. Corry took any part in inducing Mrs. Lackey to leave or remain away from her husband under such circumstances and for such purposes, then, under the law, she cannot recover for necessaries furnished Mrs. Lackey or her daughter either. The law will not favor improper interference between husband and wife, and he or she who may be guilty thereof cannot, under the law, be permitted to profit thereby."

It is claimed that this instruction raised a false issue; that there was no evidence to support it. But we think there was testimony justifying the submission of this question to the jury. Letters which there was testimony tending to show were in the handwriting of plaintiff were produced. One was addressed to defendant's former wife, in which the following occurred:

---

[1] See *Bond v. Markstrum*, 102 Mich. 11.

"I thought I would write again, and let you know that we are all coming out there next month to see you; so don't put yourself to any trouble, as the deserted husband can stop with a friend of mine. Have you got into society yet? How many receptions have you attended, and how is the sunshine we heard so much about last year? We will give you a real standup party when we get there. All the swell of Cleico invited, and no fooling. This is from your aunt Jennie, who clothed and fed you and your daughter, and did what your father and mother would not do, *so you could put away your husband, and get an old man, because he had more money. That will look well in print to Cleico people, won't it?*"

There was also a letter produced, which was addressed to the defendant himself, in which the following occurred:

"You are a greenie not to prosecute the old brute of a doctor. Why, man, don't you take him for damages? Sue him for $10,000, and get your children. He would settle, and you would get a good sum. He is worth about $6,000, and has about the same of his mother's invested in New York and Denver, Colorado. You can have all the witnesses from here you want. Come to Jackson, and take advice, and see what you can do. I know where they are, and will help you get witnesses. I would like to talk with you. I know all the facts you need to make a clear case, if you can come and see me."

These letters might well have been interpreted as supporting the defendant's contention, and warranted the charge last quoted.

Errors are assigned upon the admission of testimony, but a careful examination of the record convinces us that no error was committed to the prejudice of the plaintiff. The testimony was fairly limited to the questions covered by the charge, and, as pointed out on the argument, we think there was sufficient testimony to admit the letters from which quotations have been made.

The judgment will be affirmed.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.