## KNICKERBOCKER v. WORTHING.

1. JUDGES—DISQUALIFICATION—RELATIONSHIP TO ATTORNEY—SUIT
   ON CONTINGENT BASIS.

   A circuit judge, who was a brother-in-law of plaintiff's coun-
   sel, who was conducting the case on a contingent basis, was
   not disqualified to try the case under 1 Comp. Laws, § 1109,
   where, in a recess prior to the trial, the contingent fee agree-
   ment was abrogated, and counsel in open court waived any
   lien he had or might have upon any judgment which plaintiff
   might obtain.

2. HUSBAND AND WIFE — ALIENATION OF AFFECTIONS — SUIT FOR
   DIVORCE—BAR.

   Where defendant husband, in a bill for divorce on the ground
   of cruelty, makes a bona fide defense, but does not in terms
   charge his wife with adultery, his failure to do so will not
   bar him from maintaining a suit against a third person for
   alienation of affections and criminal conversation based on
   acts prior to the divorce suit.

3. SAME.

   A decision of the Supreme Court reversing a decree denying a
   divorce, and holding that the evidence showed complainant
   entitled to a divorce on the ground of extreme cruelty, is not
   a bar to an action subsequently brought, but tried before the
   decision was rendered, by defendant in the divorce suit,
   against a third person for the alienation of affections and
   criminal conversation, though adultery was in effect alleged
   as a defense in the divorce suit.

4. WITNESSES—COMPETENCY—HUSBAND AND WIFE—ADULTERY.

   Under section 10213, 3 Comp. Laws, a wife cannot testify, even
   by consent of the husband, in an action brought by the hus-
   band against a third person for alienation of the wife's affec-
   tions, when another count of the declaration charges adul-
   tery, though the evidence purports to be restricted to the
   count charging alienation of affections.

5. SAME — CROSS-EXAMINATION — QUESTIONS IMPUTING WANT OF
   CHASTITY.

   Asking a witness on cross-examination questions imputing to
   her a want of chastity, in the apparent belief that they are

competent, is not such misconduct as to warrant reversal. MOORE, C. J., dissenting.

6. ALIENATION OF WIFE'S AFFECTIONS—ADULTERY — EVIDENCE — INSTRUCTIONS.

In an action for the alienation of a wife's affections, where the charge limited the jury to the time fixed in the declaration, it was not error to refuse a request that, before plaintiff could recover, the jury must be satisfied that defendant committed adultery with plaintiff's wife substantially at the time and place and under the circumstances alleged.

7. SAME—INSTRUCTIONS—IGNORING TESTIMONY.

In an action for. the alienation of a wife's affections, a charge that plaintiff must prove, first, an adulterous disposition on defendant's part towards plaintiff's wife; second, an adulterous disposition on her part towards defendant; and, third, an opportunity for the gratification of this adulterous disposition, *held* properly refused, as ignoring testimony almost directly proving adulterous intercourse, and as calculated to lead the jury to understand that the various elements must be established by distinct and segregated testimony.

8. SAME.

In an action for the alienation of a wife's affections, a charge that mere opportunity to commit adultery is not sufficient to establish the offense; that there must be evidence of such facts, circumstances, times, and places of association as to naturally lead a man of ordinary care and prudence to the conclusion that the parties were having illicit sexual intercourse, *held* to sufficiently embrace the element of disposition to commit adultery.

9. SAME—INSTRUCTIONS—CHARACTER OF DEFENDANT.

In an action for the alienation of a wife's affections, where evidence of defendant's previous good character is erroneously admitted, defendant is not entitled to a charge giving him the benefit thereof.

Error to Hillsdale; Chester, J. Submitted April 5, 1904. (Docket No. 43.) Decided November 29, 1904.

Case by Frank J. Knickerbocker against Aaron Worthing for the alienation of his wife's affections. There was judgment for plaintiff, and defendant brings error. Affirmed.

*F. A. Lyon,* for appellant.

*Frankhauser & Cornell* and *Paul W. Chase* (*Grant Fellows,* of counsel), for appellee.

MOORE, C. J. On the 23d of May, 1901, Mary E. Knickerbocker brought suit against the plaintiff in this suit for divorce. June 1, 1901, this suit was begun against the defendant, charging him with alienating the affections of plaintiff's wife. The declaration contained two counts. The first charged the defendant with having alienated her affections by unlawfully and wrongfully poisoning her mind against him and causing their separation by means of making her presents, and lavishing his wealth and money upon her, associating himself with her, and talking disparagingly of him to her. The second count in the declaration charges the defendant with having committed adultery with her.

The testimony in the divorce case was completed in February, 1902. It was decided in December of that year by the circuit judge, who refused to grant a decree for divorce. The case was appealed to this court. An opinion was filed December 1, 1903, reversing the decree of the court below. The case is *Knickerbocker* v. *Knickerbocker,* 135 Mich. 102. The trial of this case was held in May, 1902. The jury returned a verdict in favor of plaintiff. The case is brought here by writ of error.

There are nearly 600 pages of the record. There are 135 assignments of error, upon all of which counsel says he relies. In his discussion of them he has grouped them as follows:

*First.* As to the jurisdiction of the court to hear, try, and determine the cause.

*Second.* The permitting of any evidence in the cause tending to show criminal conversation as alleged in the plaintiff's second count in his declaration, because of the fact that the plaintiff had failed to set up this charge in his answers to the bill of complaint in the divorce case, such cause having been submitted to the court for its de-

cision upon the testimony introduced therein and the pleadings in said cause.

*Third.* The refusal of the court to permit Mr. and Mrs. Knickerbocker to be sworn and examined as witnesses in the cause upon request of defendant's counsel and the consent of both Mr. and Mrs. Knickerbocker.

*Fourth.* Errors of the court in admitting and rejecting testimony in the cause.

*Fifth.* Misconduct of plaintiff's counsel in the examination of witnesses.

*Sixth.* The refusal of the court to grant the defendant's several requests to charge.

*Seventh.* Errors of the court in charging the jury.

In disposing of them we follow the order in which they were presented.

1. Did the court have jurisdiction to try the case? The circuit judge is a brother-in-law of one of the counsel for plaintiff. This fact was known to defendant's counsel for a long time. After the trial was entered upon it appeared the counsel for plaintiff had this case on shares. Their fees and the money advanced by them in the way of expenses depended upon their winning and collecting a verdict. It is the claim of counsel for defendant that he did not know this until the trial was entered upon. It is claimed by counsel for plaintiff that he learned it months before in the examination of Mr. Knickerbocker in the divorce case. After the situation was disclosed at the beginning of the trial, counsel for defendant objected to the circuit judge trying the case, because he was related to one of the attorneys, who was to be paid out of the judgment if paid at all. His contention is that section 1109, 1 Comp. Laws, should apply. A recess was taken, and, to guard against any contingency, the attorneys and client rescinded and abrogated the agreement with reference to compensation, and this fact was made to appear to the satisfaction of the circuit judge. Counsel also in open court waived any lien they had or might have as attorneys upon any judgment plaintiff might obtain. The judge held that he was not disqualified, and proceeded with the

trial. We need not decide whether the judge would have been disqualified had the contract continued. As it was abrogated, the case certainly is not within the statute. Morever, the contract was originally void on the ground of public policy. See *McCurdy* v. *Dillon*, 135 Mich. 678.

2. Did the court err in allowing evidence tending to show the truth of the allegations contained in the second count of the declaration? Counsel says plaintiff failed to set up this charge in his amended answer in the divorce case, and is now debarred from charging the defendant with said offense. It is true, the defendant in that case did not say in so many words that his wife and Mr. Worthing had committed adultery, but he, in effect, so charged them. This court so regarded the allegations of his answer, and passed upon that question in disposing of the case. Counsel also says that because the court passed upon that phase of the case, and found the charge of adultery was not made out in the divorce case, the decree in that case is conclusive upon that question; citing as to both of these claims *Gleason* v. *Knapp*, 56 Mich. 291. There is language in the opinion in that case which tends to justify the claim of counsel, but when the case is considered carefully it will be found to be distinguishable from this one. In the case of Gleason's wife against him no answer was put in. In the case of Gleason against his wife nothing was done by him except to file his bill of complaint. In the case brought by him against Knapp the court found the facts sworn to by him were entirely contradictory to his sworn bill against his wife. The question involved in the case of *Knickerbocker* v. *Knickerbocker* was whether the wife was entitled to a divorce upon the ground of cruelty. We held that she was. The question involved here is whether the affections of Mrs. Knickerbocker were alienated by the unlawful acts of the defendant. We think the case comes within *Corry* v. *Lackey*, 105 Mich. 363.

3. Did the court err in refusing Mr. and Mrs. Knicker-

bocker to be sworn ? The question arises in a somewhat peculiar way. Counsel for defendant was authorized to speak for Mrs. Knickerbocker, and offered to call her as a witness, and also offered to allow Mr. Knickerbocker to be called as a witness. Counsel for plaintiff stated to the court that, if it could lawfully be done, he had no objections, but he believed it was unlawful. After taking the question under advisement, the court declined to permit the calling of these witnesses. Counsel say, as there were two counts, the testimony at least ought to have been allowed under the first count. Counsel also says (we quote from his brief):

"It certainly would be a strange public policy that would say that a wife, who had always borne the best of a reputation, and stood as high in the community as any woman in that community, should not have the right, when charged with infidelity, to go upon the stand and protect her good name and reputation, when all parties in interest in open court should give their consent. As we said in the court below, so we say now, that, if this is public policy, we think that public policy should be reformed; and we do not believe that this court or any other court is going to hold that Mrs. Knickerbocker, under these circumstances, had not the right to go on the stand and deny the charges which were made against her, and that this denial of such right was justified because of public policy."

We cannot overlook the fact that the question of adultery is involved in the case. It is difficult to see how the testimony of the husband or wife could be given tending to prove or disprove the charge contained in the first count without its also having a bearing upon the question involved in the second count. If the testimony was permitted to be given, it would be beyond the power of the judge or counsel to confine its effect to the first count alone. Section 10213, 3 Comp. Laws, so far as it is material, reads:

" A husband shall not be examined as a witness for or against his wife without her consent nor a wife for or against her husband without his consent. * * * Nor

shall either, during the marriage or afterwards without the consent of both be examined as to any communication made by one to the other during the marriage; but in any action or proceeding instituted by the husband or wife in consequence of adultery the husband and wife shall not be competent to testify."

This section has been repeatedly construed by the court. It was held the wife was not a competent witness for the husband in a criminal conversation case in *Mathews* v. *Yerex*, 48 Mich. 361, which case was reaffirmed in *Reynolds* v. *Schaffer*, 91 Mich. 494. In *Carter* v. *Hill*, 81 Mich. 275, which was a case for the alienation of the affections, there were three counts in the declaration, one of which was for adultery. In that case it was held the husband was not a competent witness in his own behalf. All of the above cases were cited by Justice MONTGOMERY in his opinion in *Hanselman* v. *Dovel*, 102 Mich. 505, where it was held the husband was not a competent witness in a criminal conversation case, even after he had been divorced from his wife. It is very likely, as counsel suggest, that a great injustice may be done in requiring a woman to keep still when a charge of unchastity is made against her, as in this case; but it sometimes happens an individual must submit to a wrong that a greater good may come to the public. This action is such a one as is described by the statute which declares the husband and wife may not be witnesses.

4. Did the court err in admitting and rejecting testimony in the case? Under this head a great many assignments of error referring to several witnesses are discussed. It is not practicable to take up and deal with each of them. We have examined the brief and the record with care. While much of this testimony may not have had very much value standing alone, it related in some degree, at least, to the questions involved in the case. It is possible the court might properly have allowed more latitude in the cross-examination of Miss Mather as to whether her testimony had been influenced by the testimony of Mr.

Kitchen, but, taken as a whole, we do not find as to this feature of the case any reversible error.

5. Was the counsel of plaintiff guilty of misconduct in the cross-examination of witnesses?

Counsel for plaintiff concedes that in the heat and excitement of the trial he transgressed the rules, but insists no harm was done to defendant. Complaint is made of the cross-examination of Mrs. Westbrook and of Mr. Rogers. A part of the cross-examination of Mrs. Westbrook, of which complaint is made, is as follows:

"Q. Will you swear that you didn't write to Mrs. Knickerbocker substantially what I have asked you—that God had put it in your way to give her a home? I am not haggling about words. A. I don't see how I could have written it.

"Q. Will you swear that you didn't say it? A. That I didn't say it? I know I didn't say it.

"Q. Did you say in your letter that God had put it in your way to give her a home? A. I don't think so.

"Q. Will you swear that you didn't? A. I will swear that I don't remember it.

"Q. Didn't you admit, on the other trial, saying something of that kind? A. I say now I might have said it.

"Q. Ain't you right here on the stand denying it now? A. No.

"Q. Because you understand that that link of testimony would connect Mr. Worthing? A. No.

"Q. Don't you know that you are stating right now what isn't true, when you say you don't remember any such thing? A. I do not.

"Mr. Lyon: We object to that question, if your honor please.

"The Court: The answer may stand.

"Mr. Lyon: We insist this witness is entitled to fair treatment.

"Mr. Frankhauser: I will give her fair treatment if she will come in and fix up her testimony.

"Mr. Lyon: We take an exception to the remark of counsel.

"The Court: The remark ought not to have been made.

"Q. Well, perhaps I ought not to have said that. * * *

"Q. Let's see, you lived in Detroit about ten or eleven years ago? A. I don't remember just how long ago.

"*Q.* If you lived there about ten or eleven years ago, what business were you in then ? *A.* Well, I sewed.

" *Q.* Living there with your stepfather ? *A.* No; we had a double house, and I had rooms adjoining.

" *Q.* Who lived there with you, if anybody ? *A.* My daughters.

" *Q.* At one time there, isn't it a fact that a certain railroad man was caught in bed with you ? *A.* Never; no, sir; never.

" *Mr. Lyon:* That is objected to, if your honor please.

" *The Court:* The objection is good.

" *Mr. Lyon:* And we wish to have an exception on the record to counsel asking it.

" *Q.* And didn't your stepfather talk with you about it, and accuse you of it ? *A.* Never.

" *Mr. Lyon:* Now we object, if your honor please, to counsel asking these questions.

" *The Court:* The objection is good."

Mrs. Westbrook was an important witness in the case. She was sister of Mrs. Knickerbocker. The charge made against Mrs. Knickerbocker and Mr. Worthing was a grave one. The case itself was a close one. In the case of *Knickerbocker* v. *Knickerbocker*, in which the testimony was largely the same as in this case, it being our duty to pass upon the facts, we reached the conclusion that the charge was not established. Mrs. Westbrook's testimony in the main was against the plaintiff, and, if believed, would go far to establish that plaintiff's cruel conduct was the occasion of the change wrought in his wife toward Mr. Knickerbocker. The defendant had a right to have her testimony weighed upon its merits. Counsel had a right to discredit this witness, if he could, by a close and rigid cross-examination conducted within the rules of cross-examination. He did not content himself with doing this. He is an able lawyer. He subjected the witness to a rigid and searching cross-examination conducted at great length. He put question after question to her, and finally put to her a question the simple putting of which was an accusation of dishonor. When the witness indignantly repudiated the accusation, counsel ignored the ruling of the

court, and repeated the accusation by an equally objectionable question. The minds of the jury were poisoned, and the mischief was done. The case comes, I think, within the recent cases of *People* v. *Mills*, 94 Mich. 637; *People* v. *Gotshall*, 123 Mich. 474; *Gould* v. *Gregory*, 126 Mich. 594, and cases therein cited. It is undoubtedly true, as stated by counsel, that in the heat and excitement engendered by the trial he went further with the cross-examination than he intended, but that did not cure the mischief done by it.

6. Did the court err in refusing the several requests preferred by the defendant ? There were 33 of these requests, all of which were refused except as covered by the general charge. We shall refer to only such of them as we deem necessary to dispose of the case. The defendant preferred the following requests:

" 13. The second count in the plaintiff's declaration charges the alienation of his wife's affections by means of adultery having been committed with her by the defendant. Now, I charge you that, before the plaintiff can recover under this count, he must satisfy you that the defendant committed adultery with the plaintiff's wife substantially at the time and place and under the circumstances alleged by the plaintiff in his declaration.

" 14. In order to establish the charge of adultery, the plaintiff must, *first*, prove an adulterous disposition on the part of the defendant towards Mrs. Knickerbocker; *second*, an adulterous disposition on her part toward the defendant; and, *third*, the opportunity for the gratification of this adulterous disposition. If any one of these elements is lacking, the plaintiff must fail. Mere opportunity is not sufficient; neither is the adulterous disposition without the opportunity sufficient; neither would it be sufficient to prove an adulterous disposition on the part of the defendant, coupled with the opportunity, unless the plaintiff goes farther, and proves an adulterous disposition on the part of the plaintiff's wife.

" 15. The offense of adultery is a most grave and serious one, for which no person can be required to answer except upon distinct and positive specifications, to which the proof must be strictly confined. In considering the evidence produced to establish this charge, the testimony is

always to be examined with great care and solicitude, the character, motives, intelligence, memory, and credibility of the witnesses should be considered with great care, and every circumstance weighed and considered, in order that no reasonable doubt of guilt remain. When I say 'reasonable doubt' I do not mean the reasonable doubt which the law requires in the trial of criminal causes, but that reasonable doubt which the law requires the jury shall not possess in the decision of civil causes of this kind. It means, in cases of this kind, simply that the evidence must satisfy the conscience of the jury in such a manner that they are convinced to a moral certainty that the offense has been committed.

"16. It is a matter of common knowledge that a large proportion of such charges are fabricated, and that they are often allowed to be proved by incomplete testimony. This renders it necessary that the jury should exercise the utmost care in considering the testimony, and not convict unless the chain of circumstances is entirely complete.

"17. The plaintiff cannot recover under this charge if the testimony is capable of being reconciled in favor of the innocence of the defendant. Before the plaintiff can recover, the testimony must be inconsistent with the theory of innocence, or with any theory except that of guilt. If two constructions can be placed upon the testimony, one of guilt and the other of innocence, it is your duty to adopt the construction of innocence."

The entire charge of the court upon that branch of the case was as follows:

"Adultery is a crime naturally committed in secrecy, and it is not necessary, in order to convict of adultery, to produce evidence of witnesses who claim to have caught the parties in the act; but it is simply necessary to show facts and circumstances from which, if found to exist, adultery may be naturally inferred as the natural result of such circumstances. Mere opportunity to commit adultery is not sufficient to establish the offense. It must be evidence of such facts and circumstances, times and places, and association together, as would naturally lead a man of ordinary care and prudence to the conclusion that such parties were having illicit sexual intercourse. And if you find that the conduct and actions of this defendant and Mrs. Knickerbocker were such as to convince you that adultery was committed, you have a right to so find, even

though there is no witness who testifies to seeing them engaged in the unlawful act. But if the evidence of such facts and circumstances do not naturally lead to that conclusion when viewed in the light of men of ordinary care and prudence, then you should not find this defendant guilty of adultery. And you are to determine this question from all of the evidence bearing upon it, giving it due and careful consideration, that you may justly determine the truth or falsity of this claim.

"Gentlemen, there are two classes of evidence, namely, direct evidence, which is evidence from eyewitnesses, who see the things about which they testify; and circumstantial evidence, which is evidence of facts and circumstances, which, when established, lead the mind to certain conclusions or inferences taken therefrom. And I charge you that circumstantial evidence and direct evidence are both equally lawful means of establishing facts; that is to say, the law recognizes circumstantial evidence to be as convincing, when it does convince, as direct evidence. It makes no difference in this case as to plaintiff's right of action, whether Mrs. Knickerbocker was willing to accept presents, or receive attentions, or have sexual intercourse with the defendant or not. If you find the defendant guilty under either count in this declaration and the instructions I have given you, her willingness to contribute to such wrongs would not relieve defendant from liability. However, this testimony is for your consideration in determining the amount of damages, if you come to that question."

It will be observed that the thirteenth request is not covered. I think it a proper statement of the law, and it, or its equivalent, should have been given. See *Dunn* v. *Dunn*, 11 Mich. 284; *Green* v. *Green*, 26 Mich. 437; *Freeman* v. *Freeman*, 31 Wis. 235. It will also be observed that the propositions involved in request 14 were not covered by the general charge. What I have said as to request 13 will apply with equal force to this. See 8 Am. & Eng. Enc. Law (2d Ed.), p. 269; 2 Bishop, Mar., Div. & Sep. § 1370; *Freeman* v. *Freeman*, 31 Wis. 235, and the many cases there cited. Request 15 was doubtless intended to challenge the jury to the gravity of the charge. It does not contain a correct statement of the law as to

the degree and weight of evidence in this State as applied to a civil case. It is not necessary the plaintiff should sustain his case by evidence amounting to a moral certainty; but in a civil case, as well as in a criminal case, the charge of adultery is a grave and serious one, and testimony which is introduced for the purpose of establishing it should be examined with great care. The character, motives, intelligence, and credibility of the witnesses should be weighed in the light of surrounding circumstances. If, as a result of all the evidence, so considered, the plaintiff has established by a preponderance of proof the fact of adultery, it would be the duty of the jury to so find. While the request to charge was not a correct statement of the law, I think the learned judge failed to caution the jury in relation to the gravity of the offense and their duty in scrutinizing the testimony. We do not regard the sixteenth and seventeenth requests as correct statements of the law. The following request was preferred:

"The long and uniform good standing and reputation of the parties charged should be considered in their favor. Parties who have led a moral and chaste life until they have reached the age of fifty years or more are not liable of a sudden to commit this act. And if you find that the uniform standing and reputation of the parties charged in this case has always been good, that fact should weigh in their favor, and be taken into consideration by you in arriving at your verdict."

Instead of giving the request, the court said:

"The defendant has offered evidence of his good character. This was permitted, because this declaration charges him with commission of a crime; that is, intending to commit the crime of adultery. You are instructed that good character, if established, is of importance to a person charged with crime. It is not unusual, perhaps, for good men to commit crime; but it is possible, and men who stood high have been guilty. You should consider whether a person with a good character would be less liable to commit a crime than one with a bad character. You will consider this evidence with all the rest, and give the

defendant all the benefit of it that you believe him entitled to."

This question was passed upon in *Adams* v. *Elseffer,* 132 Mich. 100, under which decision the charge of the circuit judge was even more favorable to the defendant than it ought to have been. We have examined the other requests, and think they either ought not to have been given or were sufficiently covered by the general charge.

7. Did the court err in his charge to the jury? It is the claim of counsel that the judge in his charge to the jury gave undue prominence to the claim of the plaintiff and the evidence of his witnesses in support of it; that this was the more detrimental because he failed to give the same prominence to the claim of defendant and the evidence in support of it. We cannot agree with this contention of counsel. A careful reading of the charge in connection with the record convinces us that the trial judge made a successful effort to carefully and impartially present to the jury the claims of the respective parties.

For the reasons I have herein indicated, I think the judgment ought to be reversed, and a new trial ordered.

MONTGOMERY, J. The facts are sufficiently stated in the opinion of the Chief Justice. I agree with him that the circuit judge was not disqualified. I also agree that the plaintiff's action is not barred by the failure to charge adultery in terms in the answer interposed in the chancery case. There is no doubt that a bona fide defense was made in that case. It would be going beyond anything held in *Gleason* v. *Knapp,* 56 Mich. 291, relied upon by defendant's counsel, and going beyond the requirements of public policy, to hold that because the husband (if such were the fact) chose to make his defense without introducing that element he is barred from maintaining this action against another. Much less can it be said that the decision of this court in the divorce case, rendered long after the trial of the present case at the circuit, such decision being upon a question of fact, can or should have the slightest effect

upon the verdict of the jury in the present case.  I also
agree that the court was right in excluding the testimony
of Mr. and Mrs. Knickerbocker, and for reasons, suf-
ficiently stated in the opinion of the Chief Justice.

Mrs. Westbrook was called as a witness for defendant,
and on cross-examination the following questions were
propounded by plaintiff's counsel.  The answers of the
witness and the rulings of the court are also given:

" *Q.* Let's see, you lived in Detroit about ten or eleven
years ago ?  *A.* I don't remember just how long ago.

" *Q.* If you lived there about ten or eleven years ago,
what business were you in then ?  *A.* Well, I sewed.

" *Q.* Living there with your stepfather ?  *A.* No; we
had a double house, and I had rooms adjoining.

"*Q.* Who lived there with you, if anybody ?  *A.* My
daughters.

" *Q.* At one time there, isn't it a fact that a certain
railroad man was caught in bed with you ?  *A.* Never;
no, sir; never.

"*Mr. Lyon:* That is objected to, if your honor please.

"*The Court:* The objection is good.

"*Mr. Lyon:* And we wish to have an exception on the
record to counsel asking it.

"*Q.* And didn't your own stepfather talk with you about
it, and accuse you of it ?  *A.* Never.

"*Mr. Lyon:* Now we object, if your honor please, to
counsel asking these questions.

"*The Court:* The objection is good."

It is insisted that the propounding of these questions ·
constituted such misconduct on the part of counsel as calls
for a reversal of the judgment.  This contention appar-
ently proceeds upon the view that proof of want of chastity
is not admissible for the purpose of impeachment, and
that, as this must have been known to plaintiff's counsel,
he should be held to have abused his privilege in putting
the questions quoted.  It is true that as original testimony
for the purpose of direct impeachment the want of chas-
tity of a female witness cannot be shown.  It was also
held in *People* v. *Mills,* 94 Mich. 637, that it was not
error to exclude the inquiry attempted in that case on

cross-examination. The statement in the opinion is very brief, and, if understood as holding that the court may not, in its discretion, permit, on cross-examination, an inquiry into the past life of a female witness, and an inquiry as to her chastity, is misleading. In *People* v. *Harrison,* 93 Mich. 596, Mr. Justice DURAND, speaking for the court, said of such an inquiry:

"It was the duty of the circuit judge upon the cross-examination of the witness to permit such reasonable interrogation upon the subject as would fairly disclose to the jury her true character, and thus enable them to judge of the weight which should be given to her testimony."

It was, however, held that the court had not abused his discretion in the *limit* placed upon the inquiry in that case. The cases are numerous which hold that on cross-examination of a witness the test is not whether the question propounded would be proper if put to another witness for purposes of impeachment, but that, on the contrary, within limits fixed by the discretion of the trial court, the jury may be made acquainted, through the cross-examination, with the past life and character of the witness, and that only in case of a clear abuse of such discretion will the appellate court reverse the ruling of the trial judge. *Beebe* v. *Knapp,* 28 Mich., at page 72; *Leland* v. *Kauth,* 47 Mich. 508; *McBride* v. *Wallace,* 62 Mich. 454. In my judgment, it would not have been reversible error for the circuit judge to have permitted an answer to the questions put. The matter was within his discretion within the rule of the cases cited; but, even if the inquiry was not admissible, it would by no means follow that the propounding of these questions in the apparent good faith belief that they were competent should be held reversible error. The lawyer is not bound to guarantee that his position on the legal questions that arise during the progress of a trial shall in all cases be unassailable. To impose such a burden upon counsel would render fair discussion of legal questions impossible, and

would withdraw from the trial judge the great aid now derived from arguments of counsel. The law is not so.

In addition to the cases which have held that, even when questions relating to the past life of the witness, which, in the opinion of this court, should have been excluded, have been answered, yet the court would refuse to disturb the ruling on the ground that the circuit judge's discretion would not be interfered with (as in *Beebe* v. *Knapp*, supra, and *Threadgool* v. *Litogot*, 22 Mich. 272), it has been held that, where questions along this line are excluded, the propounding of such questions in good faith does not constitute error. *People* v. *Palmer*, 105 Mich. 579. See, also, *Fosdick* v. *Van Arsdale*, 74 Mich. 305, and *Prentis* v. *Bates*, 93 Mich. 235, in which my own views are set forth at length.

*People* v. *Gotshall*, 123 Mich. 474, is not, when fairly construed, out of harmony with these cases, for in that case want of good faith was apparent. The case of *Gould* v. *Gregory*, 126 Mich. 594, follows *People* v. *Gotshall*.

Error is assigned upon the refusal to give the defendant's thirteenth request, which, in substance, asked an instruction that, before the plaintiff could recover under the second count, the jury must be satisfied that the defendant committed adultery with the plaintiff's wife substantially at the time and place and under the circumstances alleged. I think the charge of the court very clearly limited the jury, as to the adultery charge, to the time fixed in the declaration, and that it was not error to refuse to give this instruction.

The fourteenth request was as follows:

"In order to establish the charge of adultery, the plaintiff must first prove an adulterous disposition on the part of the defendant towards Mrs. Knickerbocker; second, an adulterous disposition on her part towards the defendant; and, third, the opportunity for the gratification of this adulterous disposition. If any one of these elements is lacking, the plaintiff must fail. Mere opportunity is not sufficient; neither is the adulterous disposition without the opportunity sufficient; neither would it be sufficient to

prove an adulterous disposition on the part of the defendant, coupled with the opportunity, unless the plaintiff goes farther, and proves an adulterous disposition on the part of the plaintiff's wife."

This request ignores the fact that there was testimony which came very near being direct evidence of adulterous intercourse, and by its peculiar, argumentative phraseology was well calculated to give the jury to understand that the various elements named must be established by distinct and segregated testimony. Such an instruction could not have furnished a clearer guide than that given, viz. :

" Mere opportunity to commit adultery is not sufficient to establish the offense. It must be evidence of such facts and circumstances, times and places, and association together as would naturally lead a man of ordinary care and prudence to the conclusion that such parties were having illicit sexual intercourse."

The jury could not fail to understand from this that the disposition to commit adultery must be present.

The refusal to give the instruction asked as to the effect to be given to the defendant's evidence of previous good character was not error, for the reason that the defendant had greater benefit from this testimony than he was entitled to. The evidence was not admissible. *Adams* v. *Elseffer*, 132 Mich. 100.

I am satisfied that the question of fact was fairly submitted to the jury, that there was ample testimony to support the finding, and that, if the defendant has been in any way wronged, it is not in our power, keeping within the lines of our duty, to interpose.

The judgment should be affirmed.

HOOKER, J., concurred with MONTGOMERY, J.

CARPENTER, J. I agree in the conclusion reached by Justice MONTGOMERY, and, except as herein stated, I concur in his opinion. I agree that we should not reverse the case because of the questions imputing want of

chastity asked witness Mrs. Westbrook by plaintiff's counsel. I agree with Justice Montgomery that we should say that the asking of these questions did not constitute reversible error, because it is to be presumed they were asked in good faith, under the belief that the inquiry was within the discretion of the trial judge. This is as far as it is necessary to go, and it is as far as I think we should go in the case. I therefore express no opinion on the proposition that it would not have been reversible error for the circuit judge to have permitted an answer to these questions.

Grant, J., did not sit.