## PHILPOTT *v.* KIRKPATRICK.

1. RES JUDICATA — ESTOPPEL — DIVORCE — HUSBAND AND WIFE — ALIENATING WIFE'S AFFECTIONS—CASE.

Where plaintiff, in an action for alienating the affections of his wife, had, before instituting suit, procured a divorce from his wife upon the ground of extreme cruelty, in which proceedings his testimony tended to show that other persons had interfered in his domestic affairs, and his wife had ceased to feel any affection towards himself, although adultery was not charged, he was not estopped from maintaining his action on the theory that his present attitude and claims were inconsistent with the position assumed by him in the divorce case; nor was the decree *res judicata* of his right against defendant.

2. HUSBAND AND WIFE — ESTRANGEMENT AS DEFENSE TO ACTION FOR ALIENATING AFFECTIONS—MARRIAGE.

Though an estrangement may have existed between husband and wife, defendant was not justified in broadening the breach between them and engaging the affections of the wife, and he was liable for such damages as his wrongful action produced, under all the circumstances.

3. EVIDENCE—REQUESTS TO CHARGE—TRIAL.

A request to charge that the testimony of one of plaintiff's witnesses was open to suspicion if it was not communicated

to plaintiff until a long time after, was improper and the court rightly refused to give it, since the effect would have been to single out and lay stress upon that particular evidence.

Error to Lenawee; O'Mealey, J. Submitted June 10, 1912. (Docket No. 46.) Decided July 22, 1912.

Case by Jay G. Philpott against Clifford Kirkpatrick for alienating the affections of plaintiff's wife. Judgment for plaintiff. Defendant brings error. Affirmed.

*John A. Riley* and *J. N. Sampson*, for appellant.

*John B. McIlwain* and *Burton L. Hart*, for appellee.

STONE, J. This is an action on the case brought by the plaintiff to recover damages for the alienation of his wife's affections. The first two counts of the declaration charged adultery, and the third count charged that the defendant—

"On, to wit, the 1st day of January, 1907, and on divers other days and times between that date and the 21st day of May, 1909, at, to wit, the city of Adrian and in various other places, wrongfully and wickedly carried on a secret correspondence with the said Gertrude Philpott, plaintiff's wife, and held various clandestine meetings with her at his office, and also at the home of the plaintiff during his absence, and made secret and clandestine trips with her to Chicago, in the State of Illinois, and to Detroit, in the State of Michigan, and by various other arts and devices the said defendant did wrongfully and wickedly alienate and destroy the affection of the said Gertrude Philpott for the plaintiff."

When the case was called for trial, and before the trial began, the plaintiff withdrew the first two counts of the declaration, and went to trial on the third count.

The plaintiff had been a resident of Adrian since about 1900, and was there engaged in the saloon business. He was married to his wife, Gertrude, June 6, 1890, at Sarnia, Ontario; he then being about 23 and his wife 20

years of age. She had been previously married and divorced. The plaintiff had been successful in business, and he owned and maintained a valuable home in the outskirts of the city of Adrian, where he lived with his wife. The defendant is a practicing physician at Adrian, having graduated at the University of Michigan in 1881. Upon the trial of the case, the plaintiff's evidence tended to show that the first intimacy complained of was in 1908. About that time plaintiff had purchased a business at Port Huron, and was away from home a part of the time. It was the claim of the plaintiff that the intimacy between defendant and plaintiff's wife continued during the fall of 1908 and the winter of 1908-09. Conditions finally became such that in the month of March, 1909, the plaintiff filed a bill for divorce, alleging, among other things, that he and his wife had lived together and cohabited from the time of their marriage continuously until the 2d day of July, 1906. The bill of complaint, as printed in the record, contains the following:

"And the said defendant disregarded the solemnity of her marriage vow, and has treated your orator with extreme cruelty, and wilfully deserted your orator on or about the said 2d day of July, 1906, since which date she has persistently refused to cohabit with your orator; * * * that said defendant and your orator have lived in the same home until within a few weeks, but for upward of two years she has refused to share your orator's bed with him."

As originally filed, the bill did not contain the words, "and has treated your orator with extreme cruelty," and these words were inserted in the bill at the time of the hearing of the divorce case. The divorce case was heard before the same circuit judge that tried the instant case. The record discloses that at the close of the testimony in the divorce case the circuit judge made the following announcement:

" I think you may take a decree upon extreme cruelty and desertion."

171 MICH.—32.

It appears, however, that the decree, which bears date May 21, 1909, was granted upon the ground of extreme cruelty.

Upon the hearing of the divorce case, the plaintiff was a witness in his own behalf, and, among other things, testified as follows:

"*Q.* Did you live together as man and wife from the time you were married up to what date, or approximately what date?

"*A.* Why, I think about three years this coming July.

"*Q.* Since that time have you lived together as husband and wife?

"*A.* No, sir.

"*Q.* And whose fault was it that you didn't live together as husband and wife after that?

"*A.* I think it was her fault.

"*Q.* Well, do you know?

"*A.* Yes, sir.

"*Q.* What excuse did she give for refusing to live together as husband and wife?

"*A.* She said she didn't care for me any more.

"*Q.* And what did she do with reference to having a bolt on her sleeping room, a lock?

"*A.* She had her sleeping room and I had mine. She locked her door, and refused to let me come to her room.

"*Q.* And have you maintained family relations with her at all since 1906?

"*A.* No, sir.

"*Q.* Mr. Philpott, what reason did she give you at the time she discontinued the family relations with you?

"*A.* Why, she said she didn't care for me any more.

"*Q.* Well, do you know why?

"*A.* I think she was interested in other parties.

"*Q.* Well, tell the court in a general way what made you think that.

"*A.* Why, her treatment; she never wanted me at home.

"*Q.* What, if anything, of her going and coming?

"*A.* She told me she would go and come at her own free will. She didn't want to allow me a key to my own house, and she entertained anybody she saw fit in her own house. She made several trips to Detroit and Chicago, to my knowledge, without saying anything to me about it, and without my permission, until she wrote me that

she was there, that she wanted more money all the time, and was having a good time.  *  *  *  I have a busi-ness at Port Huron as well as here, and have devoted my time between that place and here. I have been away from home nearly half of the time the last six years.

"*Q.* Now, was her indisposition to maintain the marriage relation due to any extent to any physical ailment?

"*A.* Not to my knowledge.

"*Q.* Did she ever give that as an excuse?

"*A.* No, sir.

"*Q.* Since she ceased to maintain the marriage relation, you have lived here in the home until when?

"*A.* Three or four months ago.

"*Q.* And during the last two or three or four years what has been her treatment of you generally in the home and elsewhere?

"*A.* Why, she hasn't treated me at all.  She hasn't even talked with me.  I would sit in one part of the house and she in another.  It wasn't very pleasant for me."

The defendant married Mrs. Philpott on June 13, 1910, and this suit was commenced on June 25, 1910, and the trial began April 4, 1911.  Upon the trial of the case the defendant, having given notice thereof, claimed that, by reason of the divorce proceedings and the claim of the plaintiff therein, he was estopped from maintaining this action.  The record and testimony in the divorce case were offered in evidence by the defendant and received. The plaintiff was examined upon the subject of his testimony in the divorce case, and testified, in substance, that it was his best judgment that it was not as far back as 1906 when he ceased family relations with his wife.  He sought to modify and explain his testimony in the divorce case, and claimed that, when he testified "and she entertained anybody she saw fit in her own house," the person he referred to at that time was the defendant in this suit, and that where the testimony speaks of three or four years he claimed it should be months instead of years, and he testified that at the time of giving his evidence in the divorce case he was very nervous and annoyed a great deal because of the suit.  When the evidence in the

case was closed, defendant's counsel moved the court to direct a verdict for the defendant, for the reason that the decree in the divorce case was a bar to the action.

As we have said, the defendant gave notice under the plea of the general issue that he would show:

"That the facts alleged in the plaintiff's bill of complaint, and sworn to by him on said hearing, are entirely contradictory of, and inconsistent with, the allegations of plaintiff's declaration in this case, will further show and insist that said bill of complaint, the testimony of said plaintiff in said hearing, together with the decree aforesaid therein, estopped the plaintiff from now testifying the truth of the facts alleged in his declaration, and that said bill of complaint, the testimony of plaintiff, and said decree and the records and files in said case constitute and are a bar to this action, and a bar to any claim or any right of action alleged by plaintiff in his declaration in this cause."

The motion was overruled, and defendant's counsel excepted.

A witness of the plaintiff, Emma Alexander, had testified that upon one occasion, while working at the Philpott home, she saw Mrs. Philpott sitting on the defendant's lap one evening; that she saw this through a window, and on another occasion that she saw Mrs. Philpott sitting on a little ottoman, while she and the defendant were alone, and the defendant was sitting in an easy chair and Mrs. Philpott seemed to be resting her arms on the defendant's legs, and they were talking. The testimony shows that after that the witness had frequent opportunities to communicate these facts to the plaintiff while in the employ of the plaintiff, but she did not do it until after her dismissal from his service. The defendant requested the court to charge the jury upon the subject as follows:

"You are instructed that if you find from the evidence that the misconduct testified to by Miss Alexander, the colored servant, was not promptly communicated to the plaintiff, the injured party, and was not disclosed to him until after her dismissal from the services, or after a long interval, her testimony labors under great suspicion."

This request was refused. The case was submitted to the jury, and the trial resulted in a verdict and judgment for the plaintiff. The defendant has brought the case here by writ of error. We shall consider those assignments of error only which have been discussed by the appellant.

The errors relied upon by the appellant are, by his counsel, grouped under the following heads:

*First.* Errors of the court in admitting certain testimony.

*Second.* Errors of the court in excluding certain testimony.

*Third.* Error of the court in refusing to direct a verdict for the defendant.

*Fourth.* Error of the court in refusing a certain request to charge.

1, 2. We have read the record, and have carefully examined the rulings of the court upon the questions raised by the first and second heads in appellant's brief, and are of opinion that there was no reversible error in the rulings of the court. As those matters were not urged at the oral argument, we shall not further refer to them.

3. This brings us to the ruling of the court in refusing to direct a verdict on motion of the defendant at the close of the testimony, and raises the most meritorious question in the case, and the one on which counsel for both parties based their oral arguments at the hearing. The position of counsel for appellant is, as we understand it, that the claim made by the plaintiff in the instant case is so directly contradictory of the facts established in his divorce suit that both cases cannot possibly be true, and they rely upon the case of *Gleason* v. *Knapp*, 56 Mich. 291 (22 N. W. 865, 56 Am. Rep. 388). The facts in that case were very peculiar, and the case should be examined with care in order to ascertain really what was decided. In that case the plaintiff sued defendant for criminal conversation with his wife, and recovered in the circuit court. There the plaintiff and his former wife (who had at the time of the

trial been divorced, and she had married the defendant) were married in 1874. In September, 1880, the plaintiff had hired out his wife's services to defendant as house-keeper, and made an arrangement for his own services on defendant's farm. After a time plaintiff and defendant had some difficulty. Plaintiff's wife refused to go away with him from Knapp's place, but plaintiff left on December 24, 1880. He testified that on the night of January 1, 1881, he returned to Knapp's home and there saw, through a window, what he claimed was conduct from which adultery was to be inferred. On or about January 10, 1881, plaintiff again went to Knapp's, and he and his wife lodged together. She, however, still remained at Knapp's, and refused to go with the plaintiff when finally requested on March 16, 1881. On January 17, 1881, the wife swore to her bill of divorce against the plaintiff, alleging acts of extreme cruelty in December, 1880, as well as failure to support. To this bill Gleason put in no answer, and on proofs being taken a decree was granted in the wife's favor on February 13, 1882. Plaintiff, on February 16, 1881, filed a bill for divorce, asking a decree on the ground of his wife's adultery, and averring as the only definite act the one which he claims to have witnessed on January 1, 1881; but in that bill he swore that he had not voluntarily cohabited with her since. She entered appearance and called for a copy of the bill. No further proceedings appear in the case. Plaintiff's testimony in the suit for criminal conversation was positive that what he saw that night did not lead him to complain of his wife's adultery, or prevent his desire to have their domestic relations continue, and did not prevent subsequent cohabitation. Upon this peculiar state of facts Justice CAMPBELL said:

"The wife's divorce proceedings, which began in January, 1881, being followed by a decree which established that she had a sufficient cause of grievance at the earliest date when plaintiff attempted to show any grievance, must be regarded as a bar to any cause of action for that

grievance, if it existed. If plaintiff had such a cause of action as he now asserts, it would not only have been admissible in evidence in that divorce suit, but it would have been an absolute and perfect defense to it. The suggestion of the circuit judge that the jury might, if they saw fit, infer that that very divorce suit was the outcome of defendant's misconduct, cannot be allowed any force since defendant's (plaintiff's here) failure to defend on that ground, when that defense was open to him, and, according to his claim now, was known to him, left it as completely cut off as any other; and the decree is legally conclusive against him that no such facts exist. The facts sworn to by himself in this case are entirely contradictory to his sworn bill concerning the important allegation that he never cohabited with his wife after January 1, 1881, and his claim that he persisted in desiring her return after both bills were filed is somewhat extraordinary in view of this action. * * * There is nothing on plaintiff's own showing which, in our view, left him anything to go to the jury upon, as the divorce proceedings were introduced by himself, and without showing them he could not have been offered as a witness at all. * * * The defense made by his own silence in the divorce suit is as full a bar as could be made, and, in view of it, the case is a very singular one to be brought in a court of justice after the divorce had become absolute and not appealed from."

It will be noted that in the above case the plaintiff introduced the divorce proceedings himself.

*Gleason* v. *Knapp, supra,* was commented upon by this court in *Knickerbocker* v. *Worthing,* 138 Mich. 224 (101 N. W. 540). There are two opinions in that case. There had been a divorce case—*Knickerbocker* v. *Knickerbocker,* 135 Mich. 102 (97 N. W. 117)—which was pending on appeal in this court when the suit for alienation of affections was on trial. Chief Justice MOORE there said:

"Counsel says plaintiff failed to set up this charge in his amended answer in the divorce case, and is now debarred from charging the defendant with said offense. It is true the defendant in that case did not say in so many words that his wife and Mr. Worthing had committed adultery,

but he, in effect, so charged them. This court so regarded the allegations of his answer, and passed upon that question in disposing of the case. Counsel also says that because the court passed upon that phase of the case, and found the charge of adultery was not made out in the divorce case, the decree in that case is conclusive upon that question, citing as to both of these claims *Gleason* v. *Knapp*, 56 Mich. 291 [22 N. W. 865, 56 Am. Rep. 388]. There is language in the opinion in that case which tends to justify the claim of counsel, but, when the case is considered carefully, it will be found to be distinguishable from this one. In the case of Gleason's wife against him no answer was put in. In the case of Gleason against his wife nothing was done by him except to file his bill of complaint. In the case brought by him against Knapp the court found the facts sworn to by him were entirely contradictory to his sworn bill against his wife. The question involved in the case of *Knickerbocker* v. *Knickerbocker*, was whether the wife was entitled to a divorce upon the ground of cruelty. We held that she was. The question involved here is whether the affections of Mrs. Knickerbocker were alienated by the unlawful acts of the defendant. We think the case comes within *Corry* v. *Lackey*, 105 Mich. 363 [63 N. W. 418]."

Justice MONTGOMERY, in the opinion which became the majority opinion in the case, said:

"The facts are sufficiently stated in the opinion of the Chief Justice. * * * I also agree that the plaintiff's action is not barred by the failure to charge adultery in terms in the answer interposed in the chancery case. There is no doubt that a *bona fide* defense was made in that case. It would be going beyond anything held in *Gleason* v. *Knapp*, 56 Mich. 291 [22 N. W. 865, 56 Am. Rep. 388], relied upon by defendant's counsel, and going beyond the requirements of public policy, to hold that because the husband (if such were the fact) chose to make his defense without introducing that element he is barred from maintaining this action against another. Much less can it be said that the decision of this court in the divorce case, rendered long after the trial of the present case at the circuit, such decision being upon a question of fact, can or should have the slightest effect upon the verdict of the jury in the present case."

In *Corry* v. *Lackey, supra,* this court held that a decree of divorce granted to a wife on the ground of extreme cruelty is not *res judicata* of that question of fact, so as to prevent the husband from contesting its truth in his suit by a third person against him to recover for necessaries furnished the wife pending the divorce proceeding. The court said:

"As between the parties to that litigation, the finding of fact is final and conclusive, but between the plaintiff and defendant it is not "— citing cases.

The *Gleason Case* has been much commented upon by the courts of other States. In *Hamilton* v. *McNeill,* 150 Iowa, 470 (129 N. W. 480), the majority of the court cite the case with approval, but the decision there turned upon the peculiar statute of Iowa, which provided that "when a divorce is decreed the guilty party forfeits all rights acquired by the marriage." And it was held that such guilty party could not maintain an action for alienated affections. That court, however, points out the distinction that may exist between an action for criminal conversation, as was the *Gleason Case,* and a suit for alienation of affections by enticing, etc., as was the case it was considering, and as is the instant case. Deemer, J., dissented in a very strong opinion, and seems to be of the opinion that *Corry* v. *Lackey, supra,* overruled the *Gleason Case,* but suggests the point that the *Gleason Case* was not disposed of on the ground of public policy, but upon some theory of estoppel. In *Luick* v. *Arends,* 21 N. D. 614 (132 N. W. 353), the *Gleason Case* is again referred to and distinguished. Our attention has been called to numerous cases in other courts upon the general doctrine of estoppel.

It is the claim of the plaintiff here that the *Gleason Case* was decided upon its own peculiar facts, which are entirely different from the facts in this case. Counsel point out the fact that in the divorce case of *Philpott* v. *Philpott,* plaintiff (complainant there), filed his bill for

divorce on the ground of desertion and cruelty. A decree of divorce was rendered on the ground of cruelty.

It is said that plaintiff and his wife had to some extent become estranged, but the claim is that this estrangement existed prior to the alleged interference of the defendant. It is conceded that this would seem to be indicated by some of the testimony given by the plaintiff in the divorce case, but it is claimed he fully explained that, testifying that the estrangement between them did not cover so long a period as he is reported to have testified to in the divorce case. These facts do appear that up to the time the bill was filed plaintiff and his wife had been living together in the same household, eating at the same table, and he supporting her; but it appears that they had not cohabited together as husband and wife for some time. In the divorce case he testified as one of the reasons for their estrangement that "I think she was interested in other parties," but the name of the other party was not given. This action is now brought against that other party for alienating the affections of his wife. It is the claim of the plaintiff that there is absolutely no inconsistency in his position, that even though his testimony be accepted as binding upon him, as given in the divorce proceeding, he and his wife had not cohabited together for some time while they were living together in the same house, eating at the same table, he was supporting and furnishing her a living, and it is urged that, if the defendant had kept away as he ought to have done, there might have been a reconciliation between them.

The law seems to be well settled that, even though there be an estrangement between husband and wife, this does not give license to an outsider to invade that home and broaden the breach between them, and, if he does so, he is liable to the aggrieved party for all the injury done.

We are of opinion that the *Gleason Case* can be distinguished, and that there is not such inconsistency between the position of the complainant in the divorce case and the plaintiff in this case as to amount to an estoppel,

or a bar to this action.   The questions adjudicated in the divorce case and the case at bar are entirely different.   In the divorce case the sole question was whether she was guilty of cruelty to the plaintiff so as to justify the court in granting a divorce.   In the case at bar the question is, Did the defendant invade the home of plaintiff and alienate the affections of his wife?   We think there is force in the contention of the plaintiff that defendant's very act of invasion of that home was, or may have been, the cause of the wife's conduct towards her husband, or, at least, that it was partially the cause, and prevented a reconciliation.   The husband's right and chances to reconciliation, after separation of husband and wife, cannot wrongfully be interfered with, or prevented by a third person without giving the husband a right of action for alienation of his wife's affections.   The previous terms upon which the husband and wife may have been living, no matter how inharmonious they may have been, furnished no justification for a stranger entering the home and carrying away one or the other, or alienating the affections of husband or wife.   Death of the wife even, whose affections were alienated, does not bar or abate action.   *Luick* v. *Arends*, *supra*.   We are of opinion that a careful reading of the *Gleason Case* will show that the instant case is entirely different in its facts.

The plaintiff here, who was the complainant in the divorce case, complained of his wife and her conduct toward him, and also complained of the interference of the defendant in his testimony, although he was not named in fact.   In other words, we cannot better express it than to say that the positions of the complainant in the divorce case and that of the plaintiff in this case are not so inconsistent as to prevent a recovery in this case.   It should be borne in mind that the decree in favor of the complainant in the divorce case was because of the wife's extreme cruelty. The decree places it upon no other grounds.   As we have shown, the decree was signed on the very day the divorce was granted by the circuit judge, who also heard the in-

stant case, and there was nothing in the record to show that there was any mistake in the decree. It does appear in the record that the plaintiff desired his counsel to make the defendant a co-respondent in the divorce case. This, however, was not done. But it tends to show that the then complainant referred to the defendant when he answered " I think she was interested in other parties." In 16 Cyc. p. 724, it is said:

"The doctrine (of estoppel *in pais*) is derived from courts of equity, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed, and whose conduct they were intended to and did influence. It will be allowed to shut out the truth only when necessary to do justice, and never where it would itself operate as a fraud or work injustice. The estoppel is a protective, and not an offensive, weapon, and its operation should be limited to saving harmless or making whole the person in whose favor it arises, and should not be made an instrument of gain or profit "—citing many cases.

It was well said by this court in *McRae* v. *Bennett*, 113 Mich., at page 51 (71 N. W. 531):

"The substratum of estoppel is the fraudulent character of the representation, and its effect in wronging the person who relies upon the estoppel. But here it is proposed to use it as a sword and to perpetrate a wrong upon the plaintiff," etc.

We do not think the doctrine of estoppel in pleading, or estoppel *in pais* can apply here, or that the court erred in submitting the case to the jury.

4. The sufficiency of the evidence to sustain the verdict and the judgment is not challenged by the appellant. The only error assigned relating to the charge is that which we have set forth above, relating to the testimony of Emma Alexander. We do not think the court erred in refusing to give this request to charge. It would have been singling out the testimony of one witness, and

laying special stress upon it.    Such practice has met with the disapproval of this court.    *Springett* v. *Colerick*, 67 Mich. 362 (34 N. W. 683); *Webster* v. *Sibley*, 72 Mich. 630 (40 N. W. 772); *Seitz* v. *Starks*, 144 Mich. 448 (108 N. W. 354).

We have considered all the points urged by appellant, and we find no reversible error in the record.    The judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and OSTRANDER, JJ., concurred.    BLAIR and BIRD, JJ., did not sit.