OYLER v. FENNER.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—BURDEN OF PROOF.

In husband's action against his mother-in-law and brother-in-law for alienation of wife's affections, burden of proof was on plaintiff to show by preponderance of evidence that his wife's affections were alienated, that defendants' acts and conduct were controlling influence in bringing about such result, and that they acted from improper motives.

2. JUDGMENT—RES JUDICATA—HUSBAND AND WIFE—ALIENATION OF AFFECTIONS.

In husband's action against his mother-in-law and brother-in-law for alienation of wife's affections, court's findings in divorce suit that husband was guilty of extreme cruelty and nonsupport, as charged by wife, are not conclusive, and he has privilege of proving their untruth.

3. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—LIABILITY OF PARENTS—GOOD FAITH.

Parents are liable for wrongful alienation of affections of married child only when their conduct is malicious, so that they may, when prompted by sincere desire to promote welfare and happiness of children, advise them in good faith as to their domestic affairs without becoming liable as for alienation.

4. SAME—GOOD FAITH PRESUMED.

Conduct of parents in advising their children as to their domestic affairs is to be liberally construed, and worthy motives are to be presumed.

5. SAME—SUFFICIENCY OF EVIDENCE TO OVERCOME PRESUMPTION OF GOOD FAITH.

In husband's action against his mother-in-law and brother-in-law for alienation of wife's affections, presumption that what was said and done by defendants was prompted by proper motives, *held*, not overcome by evidence.

6. SAME—DIRECTED VERDICT.

Where, in husband's action against his mother-in-law and brother-in-law for alienation of wife's affections, undisputed evidence shows that if there was alienation of wife's affections it was in consequence of husband's long-continued misconduct, and not because of improper interference by defendants in his domestic affairs, verdict should have been directed in favor of defendants.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 18, 1933. (Docket No. 112, Calendar No. 37,178.) Decided May 16, 1933.

Case by Charles L. Oyler against Catherine Fenner and another for alienation of his wife's affec-

tions.   Verdict and judgment for plaintiff.   Defendants appeal.   Reversed, without a new trial.

*William J. Branstrom,* for plaintiff.

*John A. McLaughlin, Alexis J. Rogoski,* and *R. Glen Dunn,* for defendants.

McDONALD, C. J.   The plaintiff sued Catherine Fenner, his mother-in-law, and Louie Fenner, his brother-in-law, to recover damages for alienating his wife's affections, and received a verdict for $6,500.   On motion for a new trial, the court considered the verdict excessive to the extent of $2,000, and the plaintiff consented to remit that amount. Judgment for $4,500 was entered, and the defendants appealed.

The plaintiff and his wife lived together for 25 years.   They have two children.   For many years they lived on a farm in Muskegon county which they were buying on contract from her mother. Early in 1927, a controversy arose between them and the mother concerning their purchase and occupancy of the farm.   The result was that the plaintiff sold his stock and other personal property and moved with his family into a cottage on property belonging to defendant Louie Fenner.   While living there, the plaintiff, without informing his wife that he was going away or where he was going, left his home and went to relatives in Ohio, where he remained for three or four weeks.   While he was gone, his wife, who had not heard from him and did not know where he was, filed a bill for divorce, and later was granted a decree on the ground of extreme cruelty and nonsupport.   He was personally served with a summons, but did not appear and contest the suit. Subsequently they became reconciled, and, though

they have not remarried, are now living together to all outward appearances as husband and wife on the farm which they purchased from her mother.

The declaration jointly charges the defendants with a conspiracy to alienate his wife's affections and to break up his home, and that, in consummation of such conspiracy, they "wrongfully, unjustly, and wickedly" prevailed upon her to obtain a divorce from him. Other allegations in the bill relate to the means used by them to accomplish their purpose in bringing about the separation and divorce.

To establish his case, the burden of proof was upon the plaintiff to show by a preponderance of the evidence that his wife's affections were alienated; that the defendants' acts and conduct were the controlling influence in bringing about such result; and that they acted from improper motives.

Our examination of the evidence leads us to the conclusion that the plaintiff failed to make a case for the jury and that the court ought to have granted the defendants' motion to direct a verdict in their favor.

To prove his case, the plaintiff called as a witness his divorced wife, Elizabeth Oyler. As to the separation she testified:

"We were living together in Lou's cottage and he stole away one day and I did not see anything of him and he didn't say anything."

The undisputed testimony shows that he went to Ohio and remained there for three or four weeks without informing his wife as to his whereabouts. She was alarmed because of his absence. She went to the sheriff for assistance. He advised her that she might have him arrested for nonsupport or get a divorce. He recommended an attorney. She went

to the attorney, who, after listening to her story, prepared a bill for divorce in which it was charged that the defendant had been guilty of extreme cruelty and nonsupport; that his cruel treatment of her began shortly after their marriage in March, 1902, and increased in degree and frequency until the marital relation had become intolerable and unendurable; that he had a violent and ungovernable temper and struck her whenever he became angry; that on one of these occasions she was severely bruised; that he constantly addressed her with vile language, applying to her indecent and obscene names; that he had not shown any affection for her for many years; that she was constantly in fear of him; that he had failed to adequately support her, and that she was wholly dependent on him for support except for assistance which she received from her relatives.

In support of these charges she appeared in the circuit court at Muskegon, gave her testimony, and was granted a decree. As between the parties to the divorce suit, the circuit court's findings as to extreme cruelty and nonsupport are final and conclusive, but they are not so as between the parties in the instant case. *Corry* v. *Lackey,* 105 Mich. 363.

So in this case the plaintiff was privileged to prove the untruth of the charges made against him in the bill for divorce, but he did not do so. He made the divorced wife his witness, and, though she did so reluctantly, she again testified to their truth. The misconduct of the plaintiff toward his wife alleged in her bill as cause for divorce, found as a fact by the decree, and again conclusively proven on the trial in this case, shows that he was responsible for the alienation of her affections if they were alienated.

Notwithstanding his treatment of her, would she have applied for a divorce if she had not been urged to do so by the defendants?

Her testimony shows that she voluntarily filed her bill for divorce, and that nothing therein stated was on information received from the defendants. She said that she wished the decree as a protection from the defendant, of whom she was in constant fear of great bodily harm. Principally for that reason she went to the sheriff who suggested the divorce and recommended a lawyer. There is no evidence that the defendants induced her to go to the sheriff. In fact, she testified that none of the family would take her to the sheriff.

"I didn't seem to have nobody to help me, and my neighbor was there and he said 'if that was my sister, I would take her' and they talked about it and finally Lou took me. We went to the sheriff's office and after that we went to the lawyer's office."

But she did testify that some time prior to her visit to the sheriff her mother advised her to get a divorce. She says she went to her mother for advice, that she related to her and to Lou how her husband had illtreated her, that he had struck her on various occasions, and called her vile names.

"A parent, of course, is liable for any wrongful alienation of the affections of his married child, but only when his conduct is malicious. But parents, when prompted by a sincere desire to promote the welfare and happiness of their children, may advise them in good faith as to their domestic affairs without becoming liable as for an alienation." 30 C. J. p. 1129, § 996.

"Malice" as here used means the same as "improper motives." 13 R. C. L. p. 1471, § 521.

"It is also now very generally held that in case of unhappiness and disagreement between a married couple, the law recognizes the right of a parent to advise a son or daughter; and where such advice is given in good faith and results in a separation the act does not give the other spouse a right of action. * * * And it has been said that the conduct of the parents in such cases is to be liberally construed, and worthy motives are to be presumed." 13 R. C. L. p. 1472, § 522.

There is no evidence to overcome the presumption that anything said or done by these defendants was prompted by proper motives. There is no evidence that any statement either may have made to Mrs. Oyler of and concerning her husband influenced her against him. According to her testimony, she had personal knowledge of worse things about him than they could tell her. She knew that he had been guilty of unkind and brutal treatment of her, beginning early in their married life and continuing with increasing frequency and intensity up to the time of their separation. Yet with this personal experience and with what defendants had told her she continued to live with him. Evidently she did not want to leave him. He did the separating. The undisputed evidence shows that if there was an alienation of his wife's affections it was in consequence of long-continued misconduct on his part, and not because of an improper interference by the defendants in his domestic affairs.

The judgment is reversed, without a new trial. The defendants will have costs.

CLARK, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.