BENJAMIN F. WEBSTER AND ELIZA J. WALLACE, EXE-
CUTOR AND EXECUTRIX OF THE LAST WILL AND
TESTAMENT OF HENRY J. WALLACE,
DECEASED, v. HIRAM W. SIBLEY
AND ISAAC BEARINGER.

*Contract—Public policy—Sale of estimates of timber—Commissions
—Evidence—Facts equally within knowledge of the
deceased—Charge to jury.*

1. In a suit by executors upon a verbal contract claimed to have
been made with defendants by their testator, the making of
which is denied, it is the right of the defendants to put before
the jury every fact and circumstance having any tendency to
show, or raise the presumption or probability, that such con-
tract never existed.

2. The question of the ownership of estimates of timber, made by a
land-looker for a land-owner, and paid for by the latter, is one
of law.

3. Until testimony necessarily shows that a fact must have been
equally within the knowledge of a deceased person, it ought not
to be excluded under the statute making such evidence incompe-
tent in certain cases.

4. When the omission to make demand for a claim against a
debtor may be taken as a circumstance against its existence,
depends upon the circumstances of each particular case. Among
business men in cities, transacting large amounts of business,
claims are liquidated every few days, and settlements are made
on short time, and the presumption arises much sooner than
in the country, where longer credits are usually extended; but
in *all* cases the testimony is *competent*, and the question is one
for the jury.

5. It is error for the court in his charge to give a construction to
important testimony, or undue prominence to testimony of a
very doubtful character, prejudical to the rights of either
party.

Error to Saginaw. (Gage, J.) Argued October 4, 1888.
Decided November 28, 1888.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Tarsney & Weadock,* for appellants, contended:

1. No one employed in the capacity that Wallace was has a right to sell, in the market, the information and estimates thus secured, and defendants have a right to avail themselves of the illegality of the alleged contract; citing *Michoud v. Girod,* 4 How. 553; *Herman v. Martineau,* 1 Wis. 151; *Scribner v. Collar,* 40 Mich. 375.

*Wisner & Draper,* for plaintiffs, contended:

1. The information or knowledge acquired by Wallace did not become the sole property of Gamble to such an extent that Wallace could not use it to his own advantage, he having done all that he was employed to do to the entire satisfaction of Gamble, who makes no objection; citing *Geiger v. Harris,* 19 Mich. 214; *Page v. Wells,* 37 Id. 415; but, in any event, no one but Gamble could take advantage of such use; citing *Richardson v. Welch,* 47 Mich. 309.

SHERWOOD, C. J.   Henry J. Wallace, in his life-time, was engaged in looking lands and timber in Saginaw county.   He had examined and estimated the amount of a quantity of timber standing upon what was known as the " Gamble Tract," and Wallace's executors' claim in this suit is that he, in his life-time, furnished to the defendants, or gave to Mr. Bearinger for them, at their request, a statement of his estimates of the timber upon said tract, with the understanding and agreement with Mr. Bearinger that Wallace was to be paid therefor in case defendants should purchase the property of the owner; and that they did purchase it, and that by reason of the premises said Wallace became entitled to have of defendants a sum equal to 5 per cent. of the money for which said property was sold; and the plaintiffs, in their representative capacity, bring this suit therefor, filing their declaration upon all the common counts, and giving as a bill of the items of plaintiffs' demand the following:

" To commissions, or a sum of money in the nature of commissions, due the plaintiffs from defendants by reason of the purchase by defendants from Henry Gamble of a tract of pine lands about a year ago for the sum of $105,-000. Plaintiffs claim 5 per cent. on said sum of $105,000 as the usual and customary commissions to be paid to persons who furnish buyers of pine lands with the estimate of pine thereon.

" That plaintiff furnished defendants with estimates made by plaintiff of the pine on said lands so bought by the defendants from said Gamble at defendants' request, and under a promise from defendants to plaintiff to pay him a commission in case they, said defendants, bought said lands. The legal title to said lands was in W. R. Burt, and he conveyed to said defendants; but the said Burt only held title thereto as security. The amount of plaintiffs' claim is $5,250."

The defendants pleaded the general issue. On a trial of the cause in the Saginaw circuit, before a jury, the plaintiffs were allowed to recover a judgment for the sum of $2,884. Defendants bring error

On the trial, the contention of the defendants was that no such contract ever existed between Wallace and defendants, express or implied, as is claimed by plaintiffs in their declaration, and, if such a contract was ever made between the deceased and defendants, it was never performed by Wallace. It was further contended by defendants that if Wallace made the examination of the land, and made the estimates of timber thereon, and obtained the information relating to the same, while he was in the employ of Gamble, such estimates were the private property of Gamble, and plaintiffs' testator had no legal right to sell the same to defendants; that if he did so the transaction was void on the ground of public policy.

It was sometime in the fall of 1883 or 1884 that plaintiffs claim the deceased made the bargain with the defendants under which it is sought to hold the defendants. But one person was present when it is claimed the

agreement was made. The defendants could not testify as to what it was, because of the death of Mr. Wallace. Mr. Leathers claimed to have been present at the time, and testified to what was said. On the part of the plaintiffs he was sworn, and testified to the claimed contract as follows:

"It was in the evening, near dusk. Mr. Wallace told Mr. Bearinger that he had this land for sale; that the price was $110,000, and that it was a good trade, and wanted him to buy it, and told him that he had looked it over, and had a detailed estimate of it, and that he would bring his estimates, and give him his estimates for the land if he would pay him a commission. If he bought the land he was to pay him a commission, and he would give him the detailed estimates. * * * Bearinger told him to bring his estimates, and he would look them over. That is all I recollect of it."

On being further examined he said:

"Mr. Wallace told him that it was a good trade, and how much there was there. I think he told him there was about 28,000,000 feet. * * * Mr. Wallace said he had a refusal of the land for $110,000; that he had the land to sell. Did not say how long the refusal lasted, a refusal to sell the lands for $110,000. He did not say upon what terms the $110,000 was to be paid. * * * The understanding was he was to pay him [Wallace] if he sold the land. * * * There was nothing said about what the commission was to be. * * * I did not hear any time stated when he [Wallace] would bring the detailed estimates to Bearinger. * * * I do not pretend to give the exact language—exact words—of the parties; only the substance of it. * * * The understanding was that he [Bearinger] was to pay him [Wallace] if he sold the land.

"Q. But if he didn't sell the land, was he to get any pay?

"A. Of course not.

"Q. Did Mr. Wallace then say at that time anything to Mr. Bearinger about how long he was to have to buy it in?

"A. I didn't hear anything."

It appears that the estimates cost about $75; that it was worth about that to make them; that they saw Mr. Wallace's estimates, and bought the land sometime in the spring of 1885.

It appears from the record and the case of *Ellsmore v. Gamble*, 62 Mich. 543 (29 N. W. Rep. 97), that said Ellsmore acted as agent of Gamble in making the sale of these lands to defendants, and procured the making of such sale, and obtained his pay therefor; and the defendants claim that in making their purchase of the land they relied upon the estimates furnished for their inspection by Ellsmore; and for a long time before the sale was made defendants had discarded all negotiations and treaties with Wallace upon the subject. On the trial of the cause, when Ellsmore was upon the witness stand, he was asked by defendants' counsel:

"Did you get anything from Sibley and Bearinger in exchange for the estimates furnished?"

The testimony was excluded. We think this was error. In view of the fact that one of the parties to the claimed agreement was dead, and by reason thereof the other was excluded from testifying, and the contract being denied, it was the right and privilege of the defendants to put before the jury every fact and circumstance which would have any tendency to show, or raise the presumption or probability, that such contract never existed. The fact sought to be proved, unexplained, would have had such tendency, and ought to have been admitted.

Mr. Gamble, the owner of the land, testified that Wallace made an estimate of the lands in March, 1883, for him, and he paid Wallace therefor $117; that he never gave Wallace any permission to use the estimates thus made for him (Gamble); that he had them made to get at the value of the land, and the amount of timber there--

on; that Wallace never had the refusal of said lands but four days, and that was between the 5th and 10th of November, 1883, and that was all that Wallace had to do with the land from the time he delivered to him the estimates he made until he sold the land; and that he (witness) sold the land to the defendants; and that Wallace never had any authority, except under the refusal for the four days, to do anything with the land

When witness Hill was upon the stand, upon his cross-examination by defendants, he was asked:

" Whose property are these minutes,—that of the man who had them made and paid for them, or the land-lookers?"

The witness was not allowed to answer. It is true, the question was asked in connection with others upon the subject of custom. The question, however, only raises a question of law, and was properly excluded.

When Mr. Gamble was on the stand he testified to a conversation he had with Mr. Wallace, in which he said he had nothing to do with selling the land. He was then asked by defendants' counsel:

" What, if anything, did he say with reference to making an affidavit that he (Wallace) had nothing to do with the sale of the land, together with that of Ellsmore, if anything?"

The answer to this question was not allowed, on the objection of irrelevancy and incompetency. The conversation queried after related to a conversation which Wallace had with the witness, relating to Ellsmore's efforts to get his pay of witness for selling the lands to defendants; in which a suit was had. We think the testimony should have been allowed. The testimony tended to negative a portion of the services for which he claimed, and was relevant.

When Bearinger was upon the stand he was asked by counsel for defendants to—

"State whether or not you ever made any contract, bargain, or agreement with reference to the Gamble lands, in presence of George H. Leathers."

George said he had, when examined for plaintiffs. The court ruled the question was equally within the knowledge of the deceased, and excluded the testimony upon that ground.

This was error. The defendants were not bound by the testimony of Leathers. It was their privilege to contradict him in any way they could upon a material point. The effect of the testimony may or may not have been to establish a fact equally within the deceased's knowledge, but until it does necessarily show the fact to be equally within such knowledge, it ought not to be excluded.

The defendants offered to show that it was not until about two or three years after, as Wallace's representatives claim, he was entitled to the pay they seek from defendants, that he made known that any such claim existed, or that he informed defendants thereof. When the omission to make demand for a claim against a debtor may be taken as a circumstance against its existence, depends upon the circumstances of each particular case. Among business men in cities, transacting large amounts of business, claims are liquidated every few days, and settlements made on short time, and the presumption arises much sooner than in the country, where longer credits are usually extended; but in all cases the testimony is competent, and the question is one for the jury, and we think the testimony offered was proper in this case. The testimony showing the time when Wallace first made the claim against defendants, and the time when he first demanded it of them, was competent evidence in the case.

It was competent to show by witness Thompson from whom Mr. Bearinger first got his information in regard to these lands, and the amount of timber thereon, and the information Mr. Tarsney gave him upon the subject, and when. The plaintiffs' claim was, in part at least, based thereon; and the defendants had a right to show the important facts in the case were different from what they were claimed to be by the plaintiffs.

We also think the defendants' twenty-first and twenty-second assignments of error, based upon two paragraphs of the judge's charge, should be sustained. They are subject to the criticism made upon them by counsel for the defendants. In the one the court aids the jury to give a construction prejudical to the rights of the defendants to an important piece of testimony. This should not be done. And in the other it gave undue importance to an item of testimony of very doubtful character, to the prejudice of the defendants. We do not think the contract, as claimed by plaintiffs, is against public policy; neither do we think the facts would justify the court in taking the case from the jury, although it is not entirely certain that the facts proved support the contract claimed with the defendants.

For the errors noted we think the judgment should be reversed, and a new trial granted.

The other Justices concurred.