## *In re* JORGENSON'S ESTATE.

1. CONTRACTS—EXPRESS CONTRACT—EVIDENCE.

Express contract on part of deceased to pay claimant against her estate for various maintenance, repair and improvement bills for two houses, living expenses, doctor and dental bills and incidentals *held,* not to have been proved.

2. ESTATES OF DECEDENTS—BURDEN OF PROOF AS TO CLAIMS.

The burden of establishing a right to recover as to each item of a claim against an estate is upon the claimant therefor.

3. SAME—LACK OF RELATIONSHIP BY BLOOD OR AFFINITY—PRESUMPTIONS.

Where there is no relationship by blood or marriage between deceased and claimant against her estate, no presumption arises that the services rendered, and expenditures made, by such claimant were without expectation of compensation therefor.

4. CONTRACTS—IMPLIED CONTRACTS.

A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor.

5. ESTATES OF DECEDENTS—IMPLIED CONTRACTS—EVIDENCE.

In proceeding for maintenance, repair, and improvement bills for house belonging to deceased, to whom claimant was not related, claimant was entitled to recover, where evidence showed he had furnished labor and materials with the expectation and intent on the part of each of them that claimant would be compensated therefor by deceased.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 21 Am. Jur., Executors and Administrators, § 383.
[4, 5] 12 Am. Jur., Contracts, §§ 4, 5.
[6, 7] 58 Am. Jur., Witnesses, § 214 *et seq.*

6. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   That the fact, if true, was equally within the knowledge of deceased, must affirmatively appear and may not be inferred, in order to bar opposite party's testimony thereto under the statute (3 Comp. Laws 1929, § 14219).

7. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   Plaintiff's undisputed testimony in his proceeding against estate of deceased woman to whom he was not related either by blood or affinity was competent to establish reasonable value of items of his claim in so far as it does not appear such testimony was of facts equally within the knowledge of deceased (3 Comp. Laws 1929, § 14219).

8. ESTATES OF DECEDENTS—HOUSE MAINTENANCE, REPAIRS AND IM-·PROVEMENTS—EVIDENCE.
   Evidence *held*, sufficient to sustain claimant's right to recover against estate of deceased for total amount of $847.18 for specific items for maintenance, repairs, and improvements to two houses owned by decedent and for her funeral expenses.

9. SAME—LIVING EXPENSES—EVIDENCE—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   Evidence *held*, insufficient or incompetent to sustain claimant's right to recover against estate of deceased for claims or the reasonable amounts thereof for groceries, coal, clothing and other expenses where such amounts or the fair value thereof were equally within the knowledge of deceased or the testimony was too indefinite, uncertain and speculative to justify the allowance (3 Comp. Laws 1929, § 14219).

Appeal from Ingham; Coash (Louis E.), J. Submitted April 6, 1948. (Docket No. 8, Calendar No. 43,624.) Decided June 14, 1948.

In the matter of the estate of Nellie G. Jorgenson, deceased. Bert McFarlane presented his claim against the estate. Claim disallowed after trial in circuit court. Plaintiff appeals. Reversed and remanded for entry of judgment.

*Person & Searl*, for plaintiff.

*Russel A. Lawler*, for defendant.

North, J. This is an appeal by one Bert McFarlane from the disallowance of a claim which he filed against the estate of Nellie G. Jorgenson, deceased, the case having been heard in the circuit court without a jury. The claimant, Bert McFarlane, went to live as a roomer and boarder in the home of Mrs. Jorgenson, a divorcee, in February or March, 1936. He continued to reside there until the date of her death, March 25, 1943, at approximately 54 years of age. During the above period Mrs. Jorgenson owned and occupied a modest home, subject to a mortgage, on McCullough street in Lansing. Evidently she was of limited financial means and to sustain herself had taken boarders and roomers, taken in washings, et cetera. McFarlane claims that shortly after he went to the home of Mrs. Jorgenson he began paying many, if not all, of the household bills; although during at least a portion of the time he resided with Mrs. Jorgenson she was on the public welfare. During the whole of that period her home, because of her circumstances, was exempt from taxation. After McFarlane went to reside with Mrs. Jorgenson she ceased taking other boarders or roomers and discontinued taking in washings. The record further shows that during the period from 1936 to March 25, 1943, something in excess of $1,000 was paid upon the principal and interest of the mortgage upon the Jorgenson home; that many repairs or improvements were made on the home property, and to some extent it was remodeled. There was papering and painting on the interior, exterior painting, a new roof, steps rebuilt, cement drive constructed, repairs to the furnace, new foundation under the garage, et cetera. It is the claim of McFarlane that he personally performed or paid for the labor incident to the above and that he paid out of his own funds the cost of materials used.

In September, 1938, Mrs. Jorgenson's mother deeded her home in Ovid, which was located on four lots, to Mrs. Jorgenson. In part McFarlane's claim against the Jorgenson estate consists of items of labor and material which he claims he furnished incident to repairing or improving the Ovid property after it was deeded to Mrs. Jorgenson, it being claimed that these improvements were made in anticipation of Mrs. Jorgenson disposing of the Lansing property whereupon she and McFarlane would occupy the Ovid property. In fact shortly prior to her death, which was rather sudden, Mrs. Jorgenson entered into a contract for the sale of her Lansing property and the transaction was consummated by deed subsequent to her death. The repairs or improvements to the Ovid property were to a great extent of the same general character as those hereinbefore referred to which were made on the Lansing property.

There is also included in McFarlane's claim, items (not detailed) incident to the maintenance of the household, such as expenditures for coal, groceries, clothing, doctor and dental bills and incidentals. In the circuit court McFarlane, to whom we refer herein as plaintiff, asserted a right to recover both on the ground of an express contract or agreement, and also on the ground of an implied contract. In contesting plaintiff's claim, the position of the estate is indicated by the following from its brief:

"There has been no showing in the case that the deceased was going to or expected to be charged with the items claimed and if the items were expended upon the premises that must be regarded as purely voluntary services rendered on the part of the claimant in the absence of the deceased. There is no place in the record wherein the deceased committed herself in any manner whatsoever to pay for the items claimed. The action on the part of the

claimant therefor necessarily must have been voluntary."

As above indicated the trial judge disallowed *in toto* McFarlane's claim. In so doing the circuit judge concluded that plaintiff had failed to establish a right to recover on either the theory of an express contract or an implied contract. Our review of this record brings the conclusion that, as the circuit judge stated in his opinion, "There is no proof of any express contract;" but we are of the opinion that he was in error in concluding that the testimony did not establish an implied contract under which plaintiff is entitled to recover at least as to a portion of his claim.

At the outset we must be mindful of the following propositions of law. The burden of establishing a right to recover as to each item included in his claim is upon plaintiff. Also, in considering the testimony and inferences to be drawn therefrom, it must be borne in mind that as between McFarlane and the deceased there was no relationship either by blood or marriage in consequence of which a presumption would arise that the services rendered and expenditures made by McFarlane were without expectation of compensation therefor. See *Pupaza* v. *Laity,* 268 Mich. 250. Another pertinent principle of law has been stated as follows: "A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor." *In re Pierson's Estate.* 282 Mich. 411, 415.

Decision of this case necessitates somewhat of a review of the testimony which plaintiff contends establishes: (1) An expectation or contemplation on the part of each of the parties concerned in the above noted transactions that he should be compensated;

and (2) what the fair amount of such compensation should be determined to be.

By plaintiff's own testimony it was uncontrovertedly disclosed that during the period he lived in the Jorgenson home he earned in his employment approximately $6,000; and out of this sum $2,000 to $2,500 was used by him otherwise than incident to the items for which he seeks to recover in this case. He also testified that at the time of Mrs. Jorgenson's death, "I did not have any of my earnings left." This testimony was offered as bearing upon his financial ability to have made the alleged expenditures in behalf of Mrs. Jorgenson. Aside from plaintiff, whose testimony, taken over objection, was competent only to the extent that it was not disclosed by the record to have been equally within the knowledge of the deceased, eight disinterested witnesses testified in support of at least some phase of his claim.

By the testimony of these other witnesses Mrs. Jorgenson's financial inability to have met the various expenditures was disclosed. As to testimony bearing upon expectation on the part of the respective parties that plaintiff should be compensated, we quote the following as a portion of the testimony given by disinterested witnesses. Lionel J. Devereaux, who was quite intimately acquainted with each of the parties, in part testified as follows:

"When I was there (in the Jorgenson home) Mr. McFarlane was doing the work himself, like cementing the drive and painting the house and fixing. He was performing the labor. Mrs. Jorgenson told me that the expenses in connection with the purchasing of material came from Bert's (Mr. McFarlane) earnings. * * * I talked with both Mrs. Jorgenson and Mr. McFarlane about installing a new heating plant in the Ovid home. Any talk that I had with Mr. McFarlane in regard thereto was in the presence of

Mrs. Jorgenson and my talk with Mrs. Jorgenson was in his presence. * * * She told me that it was to be Bert's home, * * * that it was to be his property. She told me that it was to be his because he put so much money into the McCullough street (Lansing) property and so much money in the Ovid home in repairing both of them that this was to be his reimbursement for his work and the expense. * * * Mrs. Jorgenson told me that the reason she was making the title of the Ovid property over to Bert (which was never accomplished) was that it was to be his reimbursement for the work he had put in and the expense of the two places. * * * Her statement that the title to the Ovid property was being made over to Bert and the reason therefor was made in Bert's presence, just the three of us were there."

Mrs. Gertrude Hess, who had been a friend of Mrs. Jorgenson for many years, in part testified:

"Nellie (Mrs. Jorgenson) was making the changes but she told me that Bert was making the repairs and paying the bills. I was over there when he was doing the work. Mrs. Jorgenson told me that she was fixing things so that if anything happened to her Bert would get his pay for what he was doing there. * * * She also told me that Bert was paying the ordinary household expenses, buying the coal, paying the gas bills and everything. * * * She said that she was going to fix things so that Bert would get his pay if anything happened to her. She didn't tell me that they had any agreement regarding that."

A son-in-law of Mr. Joseph Henry Ross evidently was contemplating the possibility of purchasing Mrs. Jorgenson's Lansing home; and in that connection Mr. Ross, who had known Mrs. Jorgenson for 10 or 12 years and who appears to have known considerable concerning Mr. McFarlane's doings about the Jorgenson home, testified:

"I said to her (Mrs. Jorgenson) 'Where does Bert come in on this providing it is sold?' 'Why,' she said, 'I will see that Bert gets his pay.' That is the remark she made.  *  *  *  She made a remark to me that she had arranged for Bert to get his pay and I asked her if she had made out a will and she said 'yes' she had but come to find out I guess it was not that way.  *  *  *  She denied that he (McFarlane) had any interest in it (the Lansing property) but said that he would get his pay whatever it was. She did not tell me what was due or owing him."

A sister of plaintiff, Mrs. Flossie Johnson, who knew Mrs. Jorgenson over a period of 6 or 7 years immediately preceding her death and who visited back and forth with Mrs. Jorgenson, testified:

"Mrs. Jorgenson and I sat in the room talking and he (plaintiff) was working. She never said anything about paying him in cash for the work he did. The only way she ever spoke for paying him was by leaving her property to him."

On cross-examination plaintiff testified: "I did not intend to file a claim against the estate although I intended to get my pay for what I did there."

No testimony was produced in behalf of the estate which materially conflicted with or contradicted that above quoted. In fact the only witness who testified in behalf of the estate was Mrs. Clara Whaley, the wife of Carl Whaley, who is an heir to the Jorgenson estate. We have found nothing in her testimony which has a material bearing upon the phase of the case now under consideration. Our conclusion from a review of this record is that there was ample uncontradicted competent testimony by which it was proven that plaintiff not only furnished labor and materials for the benefit of Mrs. Jorgenson, but that he did so with the expectation and intent on the part

of each of them that McFarlane would be compensated therefor by Mrs. Jorgenson.

In addition to the foregoing, it was essential to plaintiff's recovery that he should establish by competent testimony the fair amount of each item of his claim to be allowed. On this phase of the case there was no testimony except that given by plaintiff, all of which was taken subject to the objection of its being as to matters equally within the knowledge of deceased. Plaintiff took the position that his testimony as to the *reasonable value* of certain items of his claim was competent unless it appeared in the record, or was a fair inference therefrom, that such testimony was of facts equally within the knowledge of deceased. In this respect plaintiff's position was sound. It is in accord with our holdings in *Wheeler* v. *Arnold,* 30 Mich. 304; *Webster* v. *Sibley,* 72 Mich. 630; *Moore* v. *Machen,* 124 Mich. 216; *Kwiecinski* v. *Newman's Estate,* 137 Mich. 287; and *Hanna* v. *McClave,* 271 Mich. 133. A headnote in the *Hanna Case* reads:

"That the fact, if true, was equally within the knowledge of deceased, must affirmatively appear and may not be inferred, in order to bar opposite party's testimony thereto under the statute."

Our review of this record brings the conclusion that, applying the above rule and other applicable rules of evidence to the testimony, plaintiff is entitled to recover as to certain of his itemized claims, but as to others he is not entitled to recover. First we will particularize as to the various allowable items of plaintiff's claim other than those connected with the Ovid property.

We find the following items of this portion of plaintiff's claim should be allowed and in the following amounts: Roofing, Lansing house, $100; painting house, $75; repairing chimney, $3.50; porch foun-

dation and cement steps, $30; cementing driveway, $90; removing wallpaper and interior painting, $40; cistern, grade door and basement steps, $25; siding on back room, $8; cleaning and repairing furnace, new pipes and register, $18.68; removing doors and constructing archway, $16; work on and material for garage, $75. Total $481.18.

As to items of plaintiff's claim pertaining to the Ovid property, we find from the record that the following should be allowed in the amounts indicated: Roofing house, $90; painting house, $100; interior painting and papering, $20; material and labor for partition, $10; porch foundation and wall, $25; funeral bill, paid to discharge lien on Ovid property, $60; moving, roofing, and foundation of shed, $30; work on drain and cesspool, $6; seeding lots, $5; fumigating house, $20. Total $366.

Except as hereinbefore stated, the items of plaintiff's claim should be and are disallowed for one or more of the following reasons. Under the statutory rule excluding testimony equally within the knowledge of the deceased (3 Comp. Laws 1929, § 14219 [Stat. Ann. § 27.914]), the claims disallowed, or the reasonable amounts thereof, were not proven by competent testimony. Touching such items as groceries, coal, clothing, et cetera, it must be concluded from the record that the amount or fair value thereof was equally within the knowledge of Mrs. Jorgenson and, hence, plaintiff's testimony, which was the only testimony as to the amount or value of these and similar items, was incompetent. As to some of the items disallowed the testimony was too indefinite, uncertain and speculative to justify the allowance of such items.

The judgment entered in the circuit court disallowing *in toto* plaintiff's claim is reversed and the case remanded to the circuit court with instructions to enter a judgment allowing plaintiff's claim in the

sum of $847.18, and to certify such allowance to the probate court. Plaintiff will have costs of both courts.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.